**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **Melanie Kotlarsz and Joseph Allen Davis, individually and on behalf of others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**Platinum Choice Healthcare, LLC,**<br>Defendant. | **Case No.:**<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(C) ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiffs, Melanie Kotlarsz and Joseph Allen Davis ("Plaintiffs"), brings this action against Defendant Platinum Choice Healthcare, LLC ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c).

2. This is a putative class action pursuant to 47 U.S.C. § 227 *et seq*.

3. Defendant is involved in health insurance services. To promote its services, Defendant engages in unsolicited marketing, harming

1

thousands of consumers in the process.

4. Through this action, Plaintiffs seek injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiffs also seek statutory damages on behalf of themselves and members of the class, and any other available legal or equitable remedies.

5. Plaintiffs make these allegations on information and belief, with the exception of those allegations that pertain to Plaintiffs, or to Plaintiffs' counsel, which Plaintiffs allege on personal knowledge.

6. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in its entirety.

7. Unless otherwise stated, all the conduct engaged in by Defendant took place in the Southern District of Florida.

8. Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

9. Unless otherwise indicated, the use of Defendant's names in this Complaint includes all agents, employees, officers, members, directors,

heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant's named.

<h2 style="text-align:center">JURISDICTION AND VENUE</h2>

10. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiffs allege violations of a federal statute, the TCPA. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs allege a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Furthermore, Defendant and Plaintiff are residents of different states (Florida and Louisiana, respectively). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

11. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is

subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district, Defendant has established sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the State of Florida and, on information and belief, Defendant has made the same phone calls complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida.

## PARTIES

12. Plaintiff Melanie Kotlarsz is a natural person residing in Salem, North Carolina.

13. Plaintiff Joseph Allen Davis is a natural person residing in Ontario, Ohio.

14. Defendant is a company based in Boca Raton, Florida, that offers health insurance services.

## THE TCPA

15. The TCPA facilitated the creation and "operation of a single national database to compile a list of telephone numbers of residential

subscribers who object to receiving telephone solicitations[.]" 47 U.S.C. § 227(c)(3).

16. Accordingly, the TCPA prohibits "any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database[.]" 47 U.S.C. § 227(c)(3)(F)

17. Congress empowered the Federal Communications Commission ("FCC") to issue rules and regulations implementing the TCPA.

18. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated and prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and such calls can be costly and inconvenient.[1]

19. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[2]

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).
[2] *Id.*

20. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers.[3]

21. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature such that plaintiff had "'clear and conspicuous disclosure' of the consequences of providing the requested consent…and having received this information, [Plaintiff] agree[d] unambiguously to receive such calls at a telephone number the [plaintiff] designate[d]."[4]

22. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."[5]

23. In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.[6]

---

[3] *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012).
[4] *Id*. at ¶ 33.
[5] 47 C.F.R. § 64.1200(f)(12)
[6] See *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015)

24. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services."[7]

25. The FCC defined telemarketing as calls motivated in part by the intent to sell property, goods, or services.[8] This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future.[9]

26. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.[10]

27. If a call is not deemed telemarketing, the defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent.[11]

28. The United States Court of Appeals for the Eleventh Circuit found that a single, unwanted telephone call or text is enough to satisfy Article III

---

[7] *Id.* at 820; (citing 47 C.F.R. §§ 64.1200(a)(2)(iii); 64.1200(f)(12)); See also *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd 14098 ¶ 141 (2003)).

[8] *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd 14014 ¶¶ 139-142 (2003).

[9] *Id.*

[10] *Id.* at ¶ 136.

[11] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls.")

standing, pursuant to the TCPA.[12] The Court noted that "the harm associated with [one] unwanted text message shares a close relationship with the harm underlying the tort of intrusion upon seclusion."[13] Because "[b]oth harms represent 'an intrusion into peace and quiet in a realm that is private and personal'…the harms are similar in kind, and the receipt of an unwanted text messages causes a concrete injury."[14]

## GENERAL ALLEGATIONS

<u>Plaintiff Melanie Kotlarsz</u>

29. At all times relevant, Plaintiff Kotlarsz was an individual residing within the State of North Carolina.

30. At all times relevant, Defendant conducted business in the State of Florida.

31. Plaintiff Kotlarsz registered her number with the National Do Not Call Registry on August 21, 2004.

32. Defendant is required to check the National Do Not Call Registry before attempting to call.[15]

---

[12] *Drazen v. Pinto*, 74 F.4th 1336, 1339 (11th Cir. 2023)
[13] *Id*. at 1345.
[14] *Id*.
[15] 47 U.S.C. §§ 227(c)(3)(F)

33. Plaintiff Kotlarsz uses her cellular telephone which is registered on the National Do-Not-Call registry for residential purposes such as speaking with friends and family.

34. On or around November 21, 2023, Plaintiff Kotlarsz received an autodialed phone call from the phone number (336) 866-5374. Plaintiff answered and spoke to an individual who attempted to sell her health insurance. Plaintiff told the agent that she was not interested and hung up. Later that day, Plaintiff received two more calls from this same number. Plaintiff rejected both calls.

35. On or around November 21, 2023, Plaintiff Kotlarsz also received *three* autodialed phone calls from the phone number (336) 866-5367. Noticing the similarity in numbers to Defendant's other telemarketing calls, Plaintiff rejected all three calls.

36. On or around November 21, 2023, Plaintiff Kotlarsz also received two autodialed phone calls from the phone number (336) 866-5380. For the first call, Plaintiff spoke with an individual calling on behalf of Platinum Choice Healthcare. The individual attempted to sell her health insurance. Plaintiff told her she was not interested and ended the conversation. Plaintiff rejected the second call.

37. On or around November 27, 2023, Plaintiff Kotlarsz received an autodialed phone call from the phone number (336) 866-5374. Plaintiff rejected the phone call.

38. On or around November 28, 2023, Plaintiff Kotlarsz received *three* autodialed phone calls from (336) 866-5374. Plaintiff rejected each call.

39. On or around November 28, 2023, Plaintiff Kotlarsz received an autodialed phone call from (336) 866-5380. Plaintiff initially rejected the phone call. Plaintiff then called the number back twice until she finally spoke with a supervisor for Platinum Choice Healthcare so she could be free of these telemarketing solicitations. Plaintiff requested that Defendant please stop calling her.

40. On or around November 28, 2023, Plaintiff Kotlarsz received an autodialed phone call from (336) 866-5402. Plaintiff initially rejected the call and then called back. During the call back, Plaintiff requested Defendant to stop calling her.

41. On or around November 29, 2023, Plaintiff Kotlarsz received an autodialed phone call from (336) 866-5402. Plaintiff rejected the phone call.

42. On or around December 1, 2023, Plaintiff Kotlarsz received an autodialed phone call from (336) 866-5402. Plaintiff answered and spoke to an individual named "Sophie" with Platinum Choice Healthcare. Sophie attempted to sell Plaintiff health insurance. Plaintiff asked Sophie for them to stop calling her.

43. On or around December 1, 2023, Plaintiff Kotlarsz received an autodialed phone call from (336) 866-5367. Plaintiff answered and spoke to an individual named "James" who said he called on behalf of Platinum Choice Healthcare. James attempted to sell Plaintiff health insurance. Desperate, Plaintiff pleaded with James to please stop calling her and ended the conversation.

44. On or around December 1, 2023, Plaintiff received an autodialed phone call from (336) 866-5380. Plaintiff Kotlarz answered and spoke with an individual named "Deanna" calling on behalf of Platinum Choice Healthcare. As always, Defendant attempted to sell health insurance to Plaintiff. Plaintiff asked Deanna to stop calling her and hung up.

45. On or around December 1, 2023, frustrated and annoyed, Plaintiff Kotlarsz attempted to investigate and put an end to these telemarketing calls. Plaintiff called the (336) 866-5374 number. Upon answering,

Plaintiff spoke to an individual named "Christy" who said she is with Platinum Choice Health Care. Shortly afterwards, the call got dropped. Plaintiff subsequently called back and spoke to an individual named "Asan Heity" (the name is spelled as it sounded phonetically) with Platinum Choice Healthcare. Asan indicated that Platinum Choice Health Care operated out of Boca Raton, Florida. After attempting to solicit health insurance from Plaintiff, Plaintiff told Asan that she was not interested and asked them not to call again.

46. On or around December 2, 2023, Plaintiff Kotlarz received an autodialed phone call from (336) 866-5380. Plaintiff answered and spoke with "RJ" from Platinum Choice Healthcare. Plaintiff asked them to stop calling her and hung up.

47. For verification, Plaintiff's counsel called several of the phone numbers and verified that they were used by Defendant. Furthermore, on the phone calls, Defendant's representatives verified Defendant's Boca Raton address.

48. To summarize, Plaintiff Kotlarsz received the following calls from Defendant:

November 21, 2023:

- (336) 866-5374 (three calls)
- (336) 866-5367 (three calls)
- (336) 866-5380 (two calls)

November 27, 2023:
- (336) 866-5374 (one call)

November 28, 2023:
- (336) 866-5374 (three calls)
- (336) 866-5380 (one call)
- (336) 866-5402 (one call)

November 29, 2023:
- (336) 866-5402 (one call)

December 1, 2023:
- (336) 866-5374 (one call)
- (336) 866-5367 (one call)
- (336) 866-5380 (one call)
- (336) 866-5402 (one call)

December 2, 2023:
- (336) 866-5380 (one call)

49. While Plaintiff documented at least 20 calls from Defendant, Plaintiff also expressly requested that Defendant cease calling her on at least 8 occasions.

Plaintiff Joseph Allen Davis

50. At all times relevant, Plaintiff Davis was an individual residing within the State of Ohio.

51. At all times relevant, Defendant conducted business in the State of Florida.

52. Plaintiff Davis registered his number with the National Do Not Call Registry on October 22, 2023.

53. Defendant is required to check the National Do Not Call Registry before attempting to call.[16]

54. Plaintiff Davis uses his cellular telephone which is registered on the National Do-Not-Call registry for residential purposes such as speaking with friends and family.

55. On or around December 16, 2023, Plaintiff Davis received *ten* autodialed telephone calls from (220) 444-4909. Plaintiff rejected all of them except for one that he received at 1:38 p.m. During that call Plaintiff answered and spoke with an individual who called on behalf of Platinum Choice Healthcare. The individual attempted to sell Plaintiff health insurance. Plaintiff told this individual to stop calling him and asked to be put on Defendant's internal do not call registry.

56. On or around December 17, 2023, Plaintiff Davis received three autodialed telephone calls from (220) 444-4909. Plaintiff rejected all three calls.

---

[16] 47 U.S.C. §§ 227(c)(3)(F)

57. On or around December 18, 2023, Plaintiff Davis received seven calls from (220) 444-4909. Plaintiff Davis rejected the initial call and then answered the next. Plaintiff Davis spoke with an individual who called on behalf of Platinum Choice Healthcare again. The individual attempted to sell Plaintiff health insurance. Plaintiff, again, told Defendant that he was not interested and hung up. Plaintiff rejected the five other calls afterwards.

58. Plaintiff subsequently received numerous calls from Defendant, all of which came from the (220) 444-4909 number. Plaintiff rejected them all. The dates and number of calls were as follows:

- December 19, 2023 (ten calls)
- December 20, 2023 (three calls)
- December 21, 2023 (sixteen calls)
- December 22, 2023 (three calls)
- December 23, 2023 (two calls)
- December 26, 2023 (three calls)
- December 27, 2023 (four calls)
- December 28, 2023 (three calls)
- December 29, 2023 (three calls)
- December 30, 2023 (two calls)
- January 2, 2024 (two calls)
- January 3, 2024 (three calls)
- January 4, 2024 (two calls)

59. On or around January 5, 2024, Plaintiff received two others calls from Defendant at (220) 444-4909. Plaintiff rejected these two calls;

however, Plaintiff then received a third call and spoke with "Darious" from Platinum Choice Healthcare who attempted to sell him health insurance. Plaintiff asked for Defendant's address, and Defendant provided 1489 W Palmetto Park Rd., Suite 512, Boca Raton, FL 33486.

60. Defendant's phone calls constitute telephone solicitations because it encouraged the future purchase or investment in property, goods, or services under 47 U.S.C. § 227(a)(4), i.e., attempting to sell Plaintiff healthcare insurance products and/or services.

61. Defendant made the phone calls within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant made other phone calls to individuals residing within this judicial district and throughout the United States.

62. At no point in time did Plaintiffs provide Defendant with their express written consent to be contacted. This is in violation of 47 U.S.C. § 227(a)(5).

63. Moreover, Plaintiffs repeatedly asked Defendant to stop calling them.

64. Defendant's unsolicited phone calls caused Plaintiffs actual harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

65. Defendant's phone calls also inconvenienced Plaintiffs and caused disruption to their daily lives.

66. Defendant's unsolicited phone calls caused Plaintiffs actual harm. Specifically, Plaintiffs estimate that they spent numerous hours investigating the unwanted phone calls including how they obtained her number and who the Defendant was.

67. Furthermore, Defendant's phone calls took up memory on Plaintiffs' cellular phones. The cumulative effect of unsolicited phone calls and voicemails like Defendant's poses a real risk of ultimately rendering the phone unusable for other purposes as a result of the phones' memory being taken up.

## CLASS ALLEGATIONS

## PROPOSED CLASS

68. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

69. Plaintiff brings this case on behalf of Classes defined as follows:

<u>The Federal TCPA DNC Class</u>

All persons within the United States who received two telemarketing phone calls within a 12-month period from Defendant to said person's residential telephone, and such person had previously included their name on the National Do Not Call Registry at least 31 days prior to receiving Defendant first call, within the four years prior to the filing of this Complaint.

<u>The Internal DNC Class</u>

All persons within the United States who, within the four years prior to the filing of this Complaint, were called by Defendant or anyone on Defendant's behalf, to said person's cellular telephone number *after* making a request to Defendant to not receive future calls.

70. Defendant and its employees or agents are excluded from the Class.

Plaintiffs do not know the number of members in the Class but believe the Class members number in the several thousands, if not more.

**NUMEROSITY**

71. Upon information and belief, Defendant has placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

72. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

73. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(1) Whether Defendant made non-emergency calls to Plaintiffs' and Class members' cellular telephones;

(2) Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;

(3) Whether Defendant's conduct was knowing and willful;

(4) Whether Plaintiffs and the putative class members' phone numbers were on the national do-not-call registry at the time Defendant called;

(5) Whether Plaintiffs and the putative class members' asked Defendant to stop calling; and

(6)   Whether Defendant is liable for damages, and the amount of such damages;

74. The common questions in this case are capable of having common answers. If Plaintiffs' claim that Defendant routinely made phone calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

75. Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

76. Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

77. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the

claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

78. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I

### NEGLIGENT AND WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(C)(5)

79. Plaintiff re-alleges and incorporates paragraphs 1-56 as if fully set forth herein.

80. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State.

   **(A)** an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

   **(B)** an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

   **(C)** both such actions.

81. Defendant—or third parties directed by Defendant—called numbers to make non-emergency telephone calls (telemarketing solicitations) to the telephones of Plaintiffs and the other members of the Class defined below.

82. These calls were made without regard to whether Plaintiffs or class members were on the National Do Not Call Registry. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiffs and the other members of the putative Class when its calls were made.

83. Defendant has, therefore, violated § 227(c)(5) of the TCPA by making, or directing a third party to make, two or more non-emergency telephone calls to the phones of Plaintiff and the other members of the putative Class without their prior express written consent.

84. Defendant knew that it did not have prior express consent to make these calls especially since Plaintiffs told Defendant they were not interested in what Defendant offered. The violations were therefore willful or knowing.

85. As a result of Defendant's conduct and pursuant to § 227(c)(5) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation and a maximum of $1,500 in statutory damages for willful violations.

**COUNT II**
**Violations of the TCPA, 47 U.S.C. § 227(c)(2) (On Behalf of the Internal Do Not Call Class)**

86. Plaintiff repeats and realleges the paragraphs 1 through 37 of this Complaint and incorporates them by reference herein.

87. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

88. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet certain minimum standards, including:

"(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf

such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. . .(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."
47 C.F.R. § 64.1200(d)(3), (6).

89. Under 47 C.F.R § 64.1200(e) the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wires telephone numbers:

"(e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."
47 C.F.R. § 64.1200(e).

90. Plaintiff and Class members made requests to Defendant not to receive calls from Defendant. Defendant failed to honor Plaintiff and members' requests. Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of their behalf, pursuant to 47 C.F.R. § 64.1200(d).

91. Because Plaintiff and members received more than one text message in a 12- month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

92. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

93. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

94. Plaintiff and class members also suffered damages in the form of invasion of privacy.

95. Plaintiff and class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

**WHEREFORE**, Plaintiff, on behalf of herself and the other members of the Class, prays for the following relief:

a.  A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b.  An order naming Plaintiffs as class representatives;

c.  An order naming Plaintiffs' counsel as class counsel;

d.  An award of actual and statutory damages;

e.  Treble damages; and

f.  Such further and other relief the Court deems reasonable and just.

### TRIAL BY JURY

96. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: July 9, 2024                    Respectfully submitted,

BY: /S/ RYAN L. MCBRIDE_____
RYAN L. MCBRIDE, ESQ.
TRIAL COUNSEL FOR PLAINTIFF

Mohammad Kazerouni
Florida State Bar No. 1034549
**Kazerouni Law Group, APC**
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
mike@kazlg.com

Ryan L. McBride
Florida State Bar No. 1010101
**Kazerouni Law Group, APC**
2221 Caminio del Rio S., Suite 101
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
ryan@kazlg.com